Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark A. Perry
Christopher Conrad
WEIL, GOTSHAL & MANGES LLP
2001 M St NW #600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Counsel for Defendant Patriarch
Partners Agency Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, *et al.*,<br><br>　　　　　　　　　　　　　Debtors. | Chapter 7<br><br>Case No. 16-10407-DSJ<br><br>(Jointly Administered) |
| SALVATORE LAMONICA, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation*, et al.*,<br>　　　　　　　　　　　　　Plaintiffs,<br>v.<br><br>LYNN TILTON, *et al.*,<br>　　　　　　　　　　　　　Defendants. | Adv. Pro. No. 18-AP-01021-DSJ<br>Re: ECF Nos. 191, 190 |

## <u>NOTICE OF APPEAL</u>

**Part 1: Identify the Appellant(s)**

　　　1.　　**Name(s) of appellant:** Patriarch Partners Agency Services, LLC ("**PPAS**").

　　　2.　　**Position of appellant in the adversary proceeding that is the subject of this appeal:** Defendant.

**Part 2: Identify the subject of this appeal**

1.      **Describe the judgment, order, or decree appealed from:** PPAS, by and through its undersigned counsel, hereby appeals to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 158(a)(1), and in accordance with Federal Rules of Bankruptcy Procedure 8001, 8002, 8003 and 8004, from the United States Bankruptcy Court for the Southern District of New York's February 7, 2025 *Order and Judgment* [ECF No. 191] (the "**Judgment**"), along with the Court's accompanying *Decision Partly Granting Trustee's Motion to Approve Attorneys' Fees* [ECF No. 190] (the "**Decision**").  Copies of the Judgment and Decision are annexed hereto as **Exhibit A** and **Exhibit B**, respectively.

2.      **State the date on which the judgment, order, or decree was entered:**  The Judgment was entered on Friday, February 7, 2025.

**Part 3: Identify the other parties to the appeal**

The relevant parties to the judgment, order, or decree appealed from, and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| Parties | Attorneys |
|---|---|
| **Plaintiff-Appellee:**<br>Salvatore LaMonica, as Chapter 7 Trustee | Gary Herbst, Esq.<br>Jacqulyn S. Loftin, Esq.<br>**LaMonica, Herbst & Maniscalco, LLP**<br>3305 Jerusalem Avenue<br>Wantagh, New York 11793<br>(516) 826-6500<br><br>Jeffrey Chubak, Esq.<br>**Amini LLC**<br>131 West 35th Street<br>New York, New York 10001<br>(212) 497-8247 |

| Defendant-Appellant:<br>Patriarch Partners Agency Services, LLC | Ronit Berkovich, Esq.<br>**Weil, Gotshal & Manges LLP**<br>767 Fifth Avenue<br>New York, New York 10153<br>(212) 310-8000<br><br>Mark A. Perry, Esq.<br>Christopher Conrad, Esq.<br>**Weil, Gotshal & Manges LLP**<br>2001 M St NW #600<br>Washington, D.C. 20036<br>(202) 682-7000 |
|---|---|

**Part 4: Not Applicable (No BAP in this District)**

**Part 5: Signature**

Dated: New York, New York
       February 21, 2025

Respectfully submitted,

*/s/ Ronit Berkovich*
Ronit Berkovich
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Mark A. Perry
Christopher Conrad
WEIL, GOTSHAL & MANGES LLP
2001 M St NW #600
Washington, D.C. 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

*Counsel for Defendant Patriarch*
*Partners Agency Services, LLC*

**<u>Exhibit A</u>**

**Order and Judgment [ECF No. 191]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>TRANSCARE CORPORATION, et al.,<br><br>Debtors. | Chapter 7<br><br>Case No. 16-10407 (DSJ) |
| SALVATORE LAMONICA, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation, et al.,<br><br>Plaintiff,<br><br>v.<br><br>LYNN TILTON, et al.,<br><br>Defendants. | Adv. Pro No. 18-01021 (DSJ)<br><br>**ORDER AND JUDGMENT**<br><br>BC 25,0005 |

For the reasons set forth in the Decision Partly Granting Trustee's Motion to Approve Attorney's Fees, entered February 5, 2025 (ECF #190), it is hereby ORDERED and ADJUDGED that:

1.      Judgment is hereby entered in favor of plaintiff Salvatore LaMonica, as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation, et al. ("Trustee") and against defendant Patriarch Partners Agency Services, LLC ("PPAS") in the amount of $2,765,358.84; and post-judgment interest shall accrue thereon at the rate prescribed by 28 U.S.C. § 1961.

2.      The foregoing attorneys' fee award against PPAS is not subject to reduction or offset under 11 U.S.C. § 550(d) on account of the amended judgment in favor of the Trustee and against defendant Lynn Tilton (S.D.N.Y. 20-cv-06523 ECF #23) having been satisfied.

Dated:  New York, New York
            February 7, 2025

_s/ David S. Jones_
Honorable David S. Jones
United States Bankruptcy Judge

**Exhibit B**

**Decision Partly Granting Trustee's Motion to Approve Attorneys' Fees [ECF No. 190]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

In re:                                                     Chapter 7

TRANSCARE CORPORATION, et al.,                             Case No. 16-10407 (DSJ)
                                                           (Jointly Administered)

                              Debtors.

----------------------------------------------------------------X

SALVATORE LAMONICA, as Chapter 7 Trustee
of the Jointly Administered Estates of
TransCare Corporation, et al.,

                              Plaintiff,                    Adv. Proc. No. 18-01021 (DSJ)

              v.

LYNN TILTON, et al.,

                              Defendants.

----------------------------------------------------------------X

## DECISION AND ORDER GRANTING TRUSTEE'S MOTION TO APPROVE ATTORNEYS' FEES

**APPEARANCES**

**LAMONICA HERBST & MANISCALCO**
*Counsel for Plaintiff/Chapter 7 Trustee*

3305 Jerusalem Avenue

Wantagh, New York 11793

By:     Gary Herbst, Esq.

        Jacqulyn S. Loftin, Esq.

**AMINI**

*Counsel for Plaintiff/Chapter 7 Trustee*

131 West 35th Street

New York, New York 10001

1

By:   Jeffrey Chubak, Esq.


**E    GOT    A    MANGE**

*o  nse  or  a ria    ar ners   en   Servi es*

767 Fifth Avenue

New York, New York 10153

By:   Chris Conrad, Esq.

        Mark Perry, Esq.

        Ronit Berkovich, Esq.


**DA  D   JONE**

**UN TED  TATE    AN  RU T     JUDGE**

       This action arose out of the execution of two transactions that resulted in the abrupt

failure and Chapter 7 bankruptcy of TransCare Corporation ("**Tr        r** "), a regional

ambulance and paratransit company, and its debtor affiliates. The first transaction involved the

foreclosure of TransCare's assets by its term lender, Patriarch Partners Agency Services

("   **A** "). The foreclosure was planned and authorized by PPAS's owner, Lynn Tilton

("**T        **"), who was also the sole director and majority owner of TransCare. The assets were

subsequently sold to another entity also controlled by Tilton. The second transaction involved the

granting of a lien to Ark II, an entity also owned by Tilton. Following a long-running and

vigorous litigation, Salvatore LaMonica, Esq., as Chapter 7 Trustee (the "**Tr        **") secured a

base judgment of $38.2 million against Tilton for breaching her fiduciary duty to the debtor, and

a base judgment of $39.2 million plus attorneys' fees against PPAS for the intentional fraudulent

transfer of the debtor's assets. The Trustee has successfully recovered the total judgment amount

against Tilton plus interest. The Trustee's judgment against and recovery from Tilton was not

predicated in whole or in part on any entitlement of the Trustee to legal fees, because the

2

attorneys' fee award was made solely in the PPAS judgment due to the differing legal bases for each judgment. The remaining piece of this action relates to the Trustee's entitlement to quantify and recover the portion of the judgment against PPAS that awarded reasonable attorneys' fees to the Trustee.

More specifically, before the Court is a motion of the Trustee of the estates of TransCare and its debtor affiliates (collectively the "**D**      **r** ") titled *Mo ion  o a   rove a  orne  s  ees a  ard a  ains  De endan   a riar   ar ners   en   Servi es        nder De  or and   redi or   a       a* [ECF No. 169] (the "**M**         " or "**M**    ."). The Motion asserts that the Trustee is entitled to attorneys' fees awarded by this Court's Post-Trial Findings of Fact and Conclusions of Law (the "        "). Mot. at 2. Defendant PPAS filed an objection to the motion [ECF No. 178] (the "**O**           " or "**O**     ") asserting (1) that the Trustee's requested fee award is barred by the single-satisfaction rule under section 550(d) of the Bankruptcy Code because the Trustee has already recovered from Tilton $51.8 million, an amount greater than the sum of the $45.5 million judgment, inclusive of interest, against PPAS plus the total amount of attorneys' fees that the Trustee now seeks, and (2) that the Trustee's request includes (i) fees incurred for "facially" non-compensable claims that are unrelated to the prevailing fraudulent conveyance claim and (ii) questionable and insufficiently documented time entries. Obj. at 7-8; 17. In response, the Trustee filed a reply in support of the motion [ECF No. 184] (the "**R**      ") arguing that the prejudgment interest which raised the total collected judgment amount against Tilton to $51.8 million is separate from and cannot be used to satisfy the attorneys' fees judgment against PPAS, as doing so would "defeat the purpose of prejudgment interest and §550." Reply ¶ 2. The Trustee further argues that all the work it seeks compensation for is "directly related" to the fraudulent conveyance claim. Reply ¶¶ 14 -16. As to PPAS's objection to certain time entries, the Trustee

contends that any documentation deficiencies do not warrant a complete denial of the motion, and that instead the Court can apply a percentage reduction (to which the Trustee consents in principle). Reply ¶ 20. In a Sur Reply [ECF No. 185], PPAS argues that the Trustee bears the burden of showing that it continues to be injured even after receiving complete payment of the Tilton Judgment such that an award of attorneys' fee is still necessary. Sur Reply at 4-5. PPAS further reiterates that the Trustee is responsible for submitting well-documented time entries. Sur Reply at 6-7. This Court heard oral argument on the Motion on November 7, 2024 (the " r ") and reserved decision.

## A GROUND

This Decision assumes familiarity with the facts and history of this case and discusses only the background relevant to the motion it resolves.

TransCare owned and operated a network of ambulance transportation services in the Northeast and provided paratransit services to entities including the New York Metropolitan Transit Authority (the "**MTA**"). PFC at 3. Tilton was the sole director and majority owner of TransCare. *d.* at 4. Tilton also owned and controlled PPAS, TransCare's term lender. *d.* In early 2016, PPAS, authorized by Tilton, foreclosed on some of TransCare's assets (the " r ") to satisfy $10 million out of the $43 million in outstanding debt under the TransCare Term Loan. *See enera* PFC at 21-35. Subsequently, on February 24, 2016, PPAS sold the Subject Collateral to Transcendence Transit, Inc. and Transcendence Transit II, Inc (collectively "**Tr d** "), both of which were newly formed entities owned by Tilton. PFC at 31. On the same day, TransCare and ten related entities filed Chapter 7 petitions in this Court. *d.* at 31. The newly formed Transcendence failed, resulting in three additional Debtors filing Chapter 7 petitions in this Court. *d.* at 36. Following commencement of the bankruptcy

4

cases, PPAS filed a $35 million claim against the TransCare estate for the outstanding debt under the Term Loan.

**A T Ad r r r d**

On February 22, 2018, the Trustee commenced an adversary proceeding on behalf of the Debtors against, *in er a ia*, Tilton and PPAS. [ECF No. 1]. After extensive pre-trial activity, the case proceeded to trial.

Following a six-day bench trial before the then-assigned Bankruptcy Judge Stuart M. Bernstein, this Court issued "Post-Trial Findings of Fact and Conclusions of Law," ruling in favor of the Trustee on two claims: (i) breach of fiduciary duty against Tilton and (ii) fraudulent transfer against PPAS and Transcendence. [ECF No. 138]. This decision does not detail the Court's lengthy, thorough post-trial ruling, which is available on the docket for reference. In essence, for the breach of fiduciary duty claim, the Court recommended a $41.8 million judgment against Tilton, based on a finding that she breached "her fiduciary duties of loyalty and good faith" owed to TransCare. PFC at 71. For the fraudulent transfer claim, the Court found that "TransCare transferred the Subject Collateral to PPAS with the intent to hinder and delay TransCare's creditors …" PFC at 76. The Court concluded "that the transfer resulting from the strict foreclosure must be avoided, and the Estate is awarded a judgment in the amount of $39.2 million against PPAS, in addition to the Trustee's reasonable attorneys' fees." PFC at 2. As a component of its award, the Court awarded attorneys' fees against PPAS pursuant to New York's

Debtor and Creditor Law ("DCL") § 276, which allows a plaintiff to recover attorneys' fees for avoiding an intentional fraudulent conveyance. PFC at 79.[1]

On July 15, 2020, this Court entered a judgment against PPAS and Transcendence in the amount of $39.2 million, plus pre-judgment interest of $6 million, for a total judgment of $45.2 million. [ECF No. 141]. The Court also awarded reasonable attorneys' fees against PPAS (but not Tilton) in an unspecified amount to be quantified upon an application by the Trustee that was to be submitted within fourteen days after the judgment became final and non-appealable. [ECF No. 141].

Tilton filed objections to this Court's recommendation as to Tilton and PPAS appealed the judgment as to PPAS. In a decision dated September 29, 2021, the District Court affirmed this Court's $45.2 million judgment against PPAS without modification and entered a judgment against Tilton for slightly less than what this Court recommended. The District Court's resulting judgment against Tilton was in the base amount of $38.2 million, plus pre-judgment interest of $13.3 million, for a total of $51.5 million. [ECF No. 167].

PPAS and Tilton appealed the District Court's judgment to the Second Circuit. On August 28, 2023, the Second Circuit affirmed this Court's judgment against PPAS and the District Court's judgment against Tilton, finding "no error in the damages award of $39.2 million for the fraudulent conveyance or the award of $38.2 million for the breach of fiduciary duties." *In re Trans are or*. 81 F.4th 37, 58 (2d Cir. 2023). The Second Circuit denied PPAS's and Transcendence's petition for panel rehearing or rehearing en banc. [ECF No. 169-7]. PPAS did

---

[1] On December 6, 2019, New York adopted the Uniform Voidable Transactions Act (UVTA), replacing the NY Debtor and Creditor Law. The UVTA became effective on April 4, 2020. It applies to transfers made on or after its effective date. *See* DCL § 276.

not petition to the Supreme Court for a writ of certiorari within 90 days of the Second Circuit

decision. Mot. ¶ 42. As a result, this Court's judgment as against PPAS became final and non-

appealable on January 25, 2024. Mot. ¶ 31 n.2. The Trustee collected the supersedeas bond on

account of its now final judgment against Tilton of $51,794,847, inclusive of interest. Upon

receiving that payment, the Trustee filed a satisfaction of its judgment against Tilton (but not

PPAS) with the District Court. Obj. at 5.

**Tr        M        r A    r**

As this Court had previously approved, on February 7, 2024, within 14 days of the

judgment against PPAS becoming final, the Trustee filed the *Mo ion o    rove  orne s  ees*

*ard    ains De endan  a riar   ar ners   en  Servi es        nder De or and   redi or*

*a      a.* [ECF No. 169]. The Trustee's Motion seeks an award of attorneys' fees in the

amount of $4,608,931.40 (plus prejudgment interest) in satisfaction of the attorneys' fee portion

of this Court's judgment[2] against PPAS for the intentional fraudulent conveyance claim. The

Trustee does not seek payment of the principal judgment amount nor interest on that amount in

light of the satisfaction of the judgment against Tilton, which arose from the same or overlapping

facts and circumstances as did the judgment against PPAS. The Motion asserts that the requested

fee award is reasonable. Mot. at 9.

On July 15, 2024, PPAS filed an objection to the Motion. [ECF No. 178]. Defendant

PPAS objects to the Motion on two primary grounds. First, PPAS argues that the amount the

Trustee already recovered from Tilton exceeds the combined total liability owed by PPAS,

---

[2] Again, the District Court and the Second Circuit both affirmed this Court's judgment against
PPAS, which, unlike the judgment against Tilton, included "an award of reasonable attorneys'
fees to be fixed by the Court in subsequent proceedings." PFC at 80.

inclusive of interest and the amount of attorneys' fees that the Trustee seeks from PPAS. PPAS contends that the Trustee thus has already received full compensation for its judgment against PPAS by virtue of the payment already received on account of the Tilton judgment, and that any additional recovery is barred by the "single satisfaction rule," discussed below. Second, PPAS contends that the Trustee's fee request is deficient because it relies on sloppy, vague time entries that do not clearly document whether the "requested fees were incurred solely because of [Trustee's] compensable claim …." Obj. at 11.

On October 21, 2024, the Trustee filed a reply [ECF No. 184], arguing that the single satisfaction rule is not an impediment to the satisfaction of the awarded attorneys' fees because the amount paid by Tilton was solely for her liability plus statutory interest (which is a statutorily prescribed means of making a judgment-holder whole for the loss of the time value and use of money). The Trustee thus argues that the prior payment by Tilton cannot have been on account of or in satisfaction of the fee award that was entered against solely PPAS, and not Tilton. Shortly after, with the Court's prior permission [ECF No. 182], PPAS filed a sur reply [ECF No. 185], largely reiterating its prior arguments and criticizing the Trustee for failing to cure the asserted deficiencies in its time entries submitted as asserted proof of the reasonable amounts of fees attributable to its litigation against PPAS.

This Court heard oral argument on November 7, 2024, and reserved decision.

**D     U     ON**

**A  A                                              r**

The validity of this Court's award of attorneys' fees against PPAS was upheld on appeal and is not in question. The issue before the Court flows from the fact that the Trustee already has

8

collected a higher total amount from Tilton on account of the judgment against her inclusive of interest (more than $51 million) than the combined total of the base judgment against PPAS, the applicable statutory interest due, and the total amount of attorneys' fees now sought by the Trustee. PPAS contends that because the total amount of the requested attorneys' fee award plus all other possible judgment entitlements against PPAS is less than the total amount of the already-collected judgment entitlements against Tilton, the requested recovery is barred by the single satisfaction provision of section 550 of the Bankruptcy Code.

By way of statutory background, upon avoidance of a transfer, Section 550 empowers a trustee to recover the transferred property or the value of the transferred property. 11 U.S.C. § 550(a). "The purpose of section 550 is to restore the estate to the financial condition it would have been in if the avoided transfers had not occurred …" *n re  roviden  o a ies*  581 B.R. 185, 195 (Bankr. N.D. Tex. 2017). Section 550(d) limits the trustee to "only a single satisfaction" of the recovery. 11 U.S.C. § 550(d). This provision prevents the trustee from pursuing multiple recoveries of the same avoided transfer. However, PPAS concedes that the Trustee's entitlement as against PPAS in this action incorporates state law fraudulent conveyance remedies, and that the applicable New York statutory scheme authorizes awards of attorneys' fees as a component of a prevailing plaintiff's judgment. *See* Hr'g Tr. 23:8-24 [ECF No. 189].

There is no dispute that PPAS's math is correct. The amount the Trustee collected from Tilton exceeds the total possible recovery from PPAS even including the full fee award that the Trustee now seeks. In essence, PPAS is asking the Court to credit the large amount of prejudgment interest paid by Tilton as a satisfaction of the attorneys' fee awarded against PPAS.

PPAS's position is analytically misguided because it ignores the purpose and effect of the interest-award components of civil judgments. The purpose of prejudgment interest awards is "to

9

compensate [the trustee] for the value over time of the amount recovered." *In re Cassandra Group*, 338 B.R. 583, 599 (Bankr. S.D.N.Y. 2006); s*ee also In re* _____, 2018 WL 5292131, at *13 (S.D.N.Y. Oct. 24, 2018) (factoring "the loss of interest, the diminished value of the damages award due to the passage of time, and Plaintiff's lost opportunity to make use of the loss" in the calculation of prejudgment interest.). In other words, the amount of interest owed by Tilton on account of the base judgment amount awarded against her was to compensate the Trustee according to statutorily established formulas for the many years that passed between the date of injury and the time judgment was entered and, eventually, paid. So, the Trustee's successful collection from Tilton was in an amount that, applying statutory formulas, was calculated to provide the economic value of the underlying or base liability amount. This recovery thus cannot be said to have been a recovery or satisfaction of any attorneys' fee award that was entered in addition to PPAS's or Tilton's obligations to pay the base judgment amount plus interest.

This conclusion is not overcome by PPAS's citation of *In re ____ an Bros. Holdings Inc.*, 2019 WL 3852445 (S.D.N.Y. Aug. 16, 2019), *aff'd*, 821 F. App'x 66 (2d Cir. 2020), in which PPAS argues the court credited prejudgment interest towards the single satisfaction of a trustee's recovery. In that case, the appellants sought recovery from appellee in the United States after receiving only partial recovery from appellee's subsidiary in the United Kingdom. The appellee, the parent company, had served as guarantor for its U.K. subsidiary. The district court, affirming the bankruptcy court, concluded that the statutory interest paid to the appellants in the U.K. counted towards the satisfaction of the recovery pursued in the U.S. *Id.* at 13. But the obligation at issue did not involve an attorneys' fee award at all; rather, the question was whether a large interest recovery on account of collection of a base obligation amount should be counted as against a proposed supplemental recovery against a second obligor on account of the same base

obligation amount. Here, the Trustee is not seeking anything but its attorneys' fee award, and that award was solely against PPAS. Notably, PPAS did not put forward, and the Court did not find, any case where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single-satisfaction provision. In fact, PPAS's counsel acknowledged the lack of such precedent, labeling the present situation "sui generis." Hr'g Tr. 21:19.

Again, specific aspects of the record here make clear the inapplicability of *In re Jean Ros. Holdings Inc.*. Unlike in *In re Jean Ros. Holdings Inc.*, the judgment against PPAS included an award of attorneys' fees "**added**" to the base judgment against PPAS (a base amount that was nearly identical to the base amount of the Tilton judgment). PFC at 2. (emphasis added). And here, in proper recognition of the single satisfaction rule, the Trustee is not attempting to recover the base or interest components of the underlying judgment against PPAS because those amounts have been recovered from Tilton. But it cannot be said that the Trustee's recovery to date has satisfied the separate attorneys' fee award entered solely against PPAS.

Accordingly, the single-satisfaction rule does not preclude the Trustee's requested award of reasonable attorneys' fees as against PPAS.

### Reasonableness of the Attorneys' Fee Award

PPAS's objections to the reasonableness of the fees requested are more persuasive, and a downward revision of the proposed fee award is necessary.

This Court awarded "reasonable attorneys' fees in connection with the intentional fraudulent transfer claim against PPAS" in an amount to be determined later, *i.e.*, now. PFC at 100. The Court therefore must now determine what fees are "reasonable," which ordinarily

requires the Court to: "(1) determine the reasonable hourly rate; (2) determine the number of

hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee;

and (4) make any appropriate adjustments to arrive at the final fee award." *i din Serv.    J

*ea      nd v.  enaissan e   i    o din  s*,       2010 WL 1438117, at *2 (S.D.N.Y. Apr. 9,

2010).

Here, the reasonableness of the charged hourly rates has not been disputed, and the Court

sees nothing atypical or inappropriate about those rates.

However, PPAS objects that the billing documentation is vague and sloppy, and often

appears to seek compensation for tasks not demonstrably related to the successful claim against

PPAS. By way of specific example, PPAS points out deficiencies including billing for

undocumented time [ECF No. 169-1 at 53], duplicate time entries, and unprecise task

descriptions [ECF No. 169-1 at 58, 110,131-135].  The Court agrees with these criticisms.

The Trustee provided lengthy time sheets that included frequent instances of block billing

and vague entries. Even when PPAS objected for this reason, the Trustee did not shore up its

application by providing additional information or detail, or by meaningfully justifying the block

billings and vague entries. Nor has the Trustee correlated specific entries with the successful

claim against PPAS.  Instead, the Trustee merely notes that he could have sought a much larger

contingency fee, which was pre-approved by this court as reasonable, Reply at 6; and that his fee

request is not governed by the relatively stringent professional-compensation portions of the

Bankruptcy Code. *See* 11 U.S.C. § 330. Furthermore, the Trustee argues that the requested fees

all resulted from an intensive and long-running litigation against both Tilton and PPAS, arising

from common circumstances, such that in the Trustee's view all the asserted fees are

compensable. Finally, the Trustee argues that the Court need not engage in a searching line-by-

12

line review of its records, and, instead, can and should impose an across-the-board reduction of

perhaps 15 to 20 percent if the Court considers a reduction warranted. Hr'g Tr. 11, 16.

The Court agrees with PPAS that the fee application is documented with insufficient

particularity. The Court also is troubled by a lack of specific allocation of work performed to the

Tilton case alone, or the PPAS case alone, or to tasks that have been shown with particularity to

have served the interests of both cases. On the other hand, PPAS intensively litigated the matter

and, at minimum, caused the Trustee to expend great effort defending appeals to the District and

Circuit Courts, which the Trustee puts at $1.6 million. Hr'g Tr. 9:17-22 (but acknowledging "a

lumping issue … which was 150 grand").

To touch briefly on the applicable legal standards for non-Bankruptcy Code review of fee

applications, "[w]hen time records reflect vague and duplicative entries, and entries for attorneys

performing ministerial tasks, the Court may order a reduction in attorneys' fees." *ordon v. Si e*

*/ Dev.* 2011 WL 3251520, at *5 (S.D.N.Y. July 28, 2011). "In lieu of an itemized

reduction, the court may make an across-the-board percentage reduction." *a . ne in. or . v.*

*a . ne er i ied n .* 2019 WL 4014839, at *2 (E.D.N.Y. May 14, 2019), *re or and*

*re o enda ion ado ed*, 2019 WL 4015258 (E.D.N.Y. May 31, 2019). "[C]ourts have

recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an

application [and] have endorsed percentage cuts as a practical means of trimming fat from a fee

application." *. . S a e ss n or e arded i dren n . v. are* 711 F.2d 1136, 1146 (2d Cir.

1983) (citations omitted). *See a so os rove v. Sears oe o.* 1996 WL 99390, at *3

(S.D.N.Y. Mar. 7, 1996) ("[M]any of the descriptions of the work performed are vague, including

entries such as 'review of file,' 'review of documents' and 'review of [adversary's] letter.' There

can be no meaningful review of time records where the entries are too vague to determine

whether the hours were reasonably expended.") Courts have exercised a broad discretion in imposing percentage reductions. *See e. . S r e er v. in or e ran n .* 2003 WL 21511157, at *3 (S.D.N.Y. July 2, 2003) (implementing a 10% reduction for vagueness); *ss n o o o a s i i s or es i ion o r or Mas er ie es v. an s ria redi ans a* 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (imposing a 25% reduction for block billing and excess).

The Court has reviewed the Trustee's billing documentation and concludes both that PPAS's criticisms are well founded at least in part, and also that the Court is unable (and not required) to exhaustively audit the submitted billing records to calculate a precise permissible award. Rather, as authorized by the case law cited above, the Court concludes that an across-the-board reduction is necessary, and is the only feasible means of identifying a reasonable fee award. In determining the amount to reduce the request, the Court is mindful that the applicant, here the Trustee, bears the burden of establishing an appropriate fee amount, and here the Trustee has declined to mount a detailed defense of its application. In determining the amount of reduction that is appropriate, the Court here balances several considerations: the reality that these litigations were intensively fought over many years and required substantial, intensive, and skilled legal work with a largely undisputed assertion of $1.45 million in appeal costs and fees ($1.6 million less the referenced $150,000 lump billing objection); the extensiveness of the documentation deficiencies; the general accuracy of the Trustee's observation that the Tilton and PPAS litigations did turn on the same facts and circumstances and required substantially overlapping work; the reality that the work led both to a judgment against Tilton that was not legally entitled to an award of fees and to an award against PPAS that was entitled to fees; and the Trustee's presumably conscious decision not to parse its records and more granularly focus

on charges for PPAS-specific work or for work specific to the cause of action that succeeded as against PPAS.

One specific consideration is how to take into account that the work for which recovery is sought supported both judgments; the Court considered halving the award request since one could say the work functionally was half in service of securing the Tilton judgment, and half in service of securing the PPAS judgment. But that struck the Court as too restrictive, because much of the work performed was necessary to secure the judgment against PPAS even as it also led to the judgment against Tilton. It must be, however, that some incalculable (by this Court based on available information) portion of the work was Tilton-specific, and therefore not properly compensable by PPAS.

The Court also considered the fact that some unquantified portion of the work for which the Trustee seeks compensation was aimed at supporting what ultimately proved unsuccessful causes of action. Hrg. Tr. 12:6-18 (Court: "[D]id any of the work reflected in the time records go towards unsuccessful causes of action?"; Counsel of PPAS: "Unsuccessful causes of action, I believe the answer is yes" but "our point is that all these claims related in one way or another to the fraudulent conveyance at issue"). However, "[a]s a general matter, if a plaintiff prevails on a claim that generates a fee award, he may recover for work done on other claims if they were substantially related to the claim on which he prevailed." *er v. i o e or* 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010); *. n re e a ivi as ion* 565 B.R. 50, 59 (Bankr. S.D.N.Y. 2017) ("[A]pportionment is not required when claims are so intertwined that it would be impracticable, if not impossible, to separate the attorneys' time into compensable and noncompensable units.") (citation omitted). Given the relatedness of the prevailing and non-

15

prevailing claims, the Court deems it appropriate for the Trustee to be compensated for substantially overlapping work.

Balancing these factors, the Court concludes that a total reduction of 40% of the fees sought is an appropriate discount. That translates to a reduction of $1,843,572.56 from the full amount sought, leaving an award of $2,765,358.84. That strikes the Court as a reasonable approximation of the Trustee's stated legal costs on appeal, which PPAS has not persuasively disputed, plus an additional roughly $1.3 million for long-running and intensive litigation including trial work that led to the judgment, the final component of which the Trustee seems finally about to collect.

The Court thus will grant the motion in part and approve a fee award of 60% of the amount sought in the Motion.

## ON    U    ON

For the foregoing reasons, the Court grants the Plaintiff's motion to recover attorneys' fees awarded against Defendant PPAS, subject to a 40% across-the-board reduction. The resulting fee award is $2,765,358.84. Movant is to submit a proposed order to effectuate this determination after obtaining comments as to form from PPAS's counsel.

SO ORDERED.

Dated: New York, New York
      February 5, 2025

                          *s/ David S. Jones*
                          Honorable David S. Jones
                          United States Bankruptcy Judge