UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>In re: TRANSCARE CORPORATION <em>et al.</em>,<br><br>                                   Debtors.</td><td>25 Civ. 1691 (PAE)</td></tr>
<tr><td>SALVATORE LAMONICA, <em>as Chapter 7 Trustee of the Jointly-Administered Estates of TransCare Corporation et al.</em>,<br><br>                                   Plaintiff,<br>                 -v-<br><br>LYNN TILTON <em>et al.</em>,<br><br>                                   Defendants.</td><td>OPINION & ORDER</td></tr>
</table>

PAUL A. ENGELMAYER, District Judge:

This bankruptcy appeal arises from a long-running adversary proceeding brought by the

Chapter 7 Trustee of TransCare Corporation ("TransCare") against Lynn Tilton, and an entity

she controlled, Patriarch Partners Agency Services, LLC ("PPAS"). In an earlier appeal, the

Second Circuit affirmed judgments that the bankruptcy court and the district court entered in

favor of the Trustee on (1) a fraudulent transfer claim against PPAS, and (2) a breach-of-

fiduciary-duty claim against Tilton arising from the same transfer. *See LaMonica v. Tilton* (*In re*

*TransCare Corp.*), 81 F.4th 37, 59 (2d Cir. 2023) ("*TransCare I*"), *aff'g* 20 Civ. 6274 & 20 Civ.

6523, 2021 WL 4459733 (S.D.N.Y. Sept. 29, 2021). The Circuit, however, limited the Trustee

to a single recovery on these "parallel" theories of liability, under the Bankruptcy Code's rule of single satisfaction. *Id.* at 48.[1]

After the Circuit's mandate issued, the Trustee collected on the judgment against Tilton. The Trustee then sought, and the bankruptcy court awarded, attorney's fees from PPAS as to the fraudulent transfer claim. The court overruled PPAS's objection to the fee application based on the single-satisfaction rule.

PPAS has now appealed. It formulates the following question as dispositive: "whether the single-satisfaction rule precludes a chapter 7 Trustee from recovering attorneys' fees on a fraudulent transfer award against one defendant (PPAS) when the Trustee has already recovered a complete satisfaction for the same avoided transfer from a second defendant (Ms. Tilton) that undisputedly exceeds the total award (including fees) against the first defendant (PPAS)."

PPAS moves to certify this question for direct appeal to the U.S. Court of Appeals for the Second Circuit under 28 U.S.C. § 158(d)(2), based on the absence of a controlling decision of the Second Circuit or the Supreme Court on this point.

For the following reasons, the Court grants PPAS's motion to certify a direct appeal, while noting the possibility that the Circuit may find a slightly reformulated version of the question presented to more aptly capture the decisive issue.

## I.    Background

### A.    Factual Background

The Court assumes familiarity with the factual background relevant to this controversy, which is set out in detail in the Second Circuit's decision, *TransCare I*, 81 F.4th at 43–49, and

---

[1] When a bankruptcy court avoids a fraudulent transfer, the trustee may recover for the benefit of the estate either "the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). "The trustee is entitled to only a single satisfaction," *id.* § 550(d); she cannot obtain a double recovery or twice the full value of a fraudulent transfer.

2

the bankruptcy court decision on appeal, Dkt. 4, Ex. 2, at 4–8 ("Bankr. Ct. Order"). The

following summary focuses on the facts necessary for an assessment of the limited issues

presented.

TransCare was in the business of providing ambulance and paratransit services in the

mid-Atlantic region. *TransCare I*, 81 F.4th at 44. Tilton indirectly held the majority of its

equity. *Id.* PPAS, a Tilton-controlled entity, acted as an administrative agent on behalf of

several lenders to TransCare. *Id.*

By the end of 2014, TransCare had run into "serious financial problems." *Id.* These

problems deepened, and, in February 2016, Tilton directed PPAS to foreclose on certain of

TransCare's assets. *See id.* at 46. On February 24, 2016, TransCare and its subsidiaries filed for

Chapter 7 bankruptcy. *See id.* at 47. The next day, Salvatore LaMonica was appointed as the

Trustee for the TransCare estate. *See id.*

On February 22, 2018, the Trustee initiated an adversary proceeding against Tilton and

PPAS in this District. *See LaMonica v. Tilton (In re TransCare Corp)*, No. 18-1021, 2020 WL

8021060, at *1 (Bankr. S.D.N.Y. July 6, 2020) (Bernstein, J.). Along with claims not relevant

here, the Trustee brought a fraudulent conveyance claim against PPAS and a breach-of-

fiduciary-duty claim against Tilton. *See TransCare I*, 81 F.4th at 47–48. After a six-day bench

trial, Judge Bernstein issued his findings as to the former claim, and proposed findings as to the

latter. *Id.* He (1) found that PPAS had engaged in an actual fraudulent conveyance and awarded

damages, plus reasonable attorney's fees under New York Debtor and Creditor Law § 276-a

("DCL § 276-a"); and (2) recommended a finding that Tilton had violated her fiduciary duties of

3

loyalty and good faith.[2] *See TransCare I*, 81 F.4th at 47–48; *see also LaMonica*, 2020 WL 8021060, at *32–33. Tilton and PPAS appealed to the district court. *TransCare I*, 81 F.4th at 48.

In September 2021, Judge Kaplan issued a decision that (1) affirmed the bankruptcy judge's fraudulent transfer finding as to PPAS, and (2) adopted the recommendation that Tilton be found liable for breaching her fiduciary duties to TransCare. *See LaMonica v. Tilton* (*In re TransCare Corp.*), 20 Civ. 6274 & 20 Civ. 6523, 2021 WL 4459733, at *19–20 (S.D.N.Y. Sept. 29, 2021). Judge Kaplan awarded $39.2 million in damages against PPAS for the fraudulent transfer and $38.2 million against Tilton for her breach of fiduciary duties. *Id.* He noted, however, that the Trustee "is entitled only to a single satisfaction" because "the damages for the breach of fiduciary duty and the fraudulent conveyance remedy the same injury." *Id.*

The Second Circuit affirmed Judge Kaplan's decision. *See TransCare I*, 81 F.4th at 59; *see also id.* at 48 ("Because these are parallel theories of liability with respect to the same injury, the district court limited the Trustee to only a single satisfaction.").

The Trustee thereafter collected the supersedeas bond securing the judgment against Tilton pending resolution of the appeal. Bankr. Ct. Order at 7. Including pre- and post-judgment interest, the Trustee's recovery against Tilton amounted to approximately $51.8 million. *Id.*

---

[2] The fraudulent conveyance claim was a "core" bankruptcy proceeding brought under the Bankruptcy Code and New York law. The Trustee's breach-of-fiduciary duty claim was a "non-core" bankruptcy proceeding arising under Delaware law. *See Stern v. Marshall*, 564 U. S. 462, 473–75 (2011) ("[B]ankruptcy courts may enter final judgments in all core proceedings arising under title 11, or arising in a case under title 11. In non-core proceedings, by contrast, a bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court." (citation omitted)).

### B.    The Trustee's Motion to Approve Attorney's Fees

On February 7, 2024, the Trustee moved the bankruptcy court (Jones, J.)[3] to approve

attorney's fees of $4,608,931 from PPAS. *See* Bankr. Ct. Order at 7.  PPAS opposed, on the

ground that additional recovery from it was barred by the single-satisfaction rule. *See id.* at 7–8.

That was so, PPAS argued, because the Trustee had already recovered $51.8 million from Tilton,

which exceeded the $45.5 million judgment against PPAS, inclusive of pre- and post-judgment

interest. *Id.* at 9.  As depicted by PPAS, the respective judgments broke down as follows:

|  | Ms. Tilton | PPAS |
|---|---|---|
| Judgment Principal [Paid by Ms. Tilton] | $38,200,000 | $39,200,000 |
| Pre-Judgment Interest [Paid by Ms. Tilton] | $13,324,997 | $6,025,523 |
| Post-Judgment Interest [Paid by Ms. Tilton] | $269,850 | $229,386 |
| Attorneys' Fees and Costs | $0 | $2,765,358 |
| Maximum Liability and Satisfaction under 11 U.S.C. § 550 | $51,794,847 > | $48,220,267 |

Dkt. 4 at 5 ("PPAS Br.").

The bankruptcy court granted the Trustee's motion but substantially trimmed the fee

award he sought.  Noting that the relevant facts were undisputed, Judge Jones found the Trustee

entitled to attorney's fees because his "entitlement as against PPAS in this action incorporates

state law fraudulent conveyance remedies, and . . . the applicable New York statutory scheme

authorizes awards of attorneys' fees as a component of a prevailing plaintiff's judgment." *Id.* at

9.  And, he found, the single-satisfaction rule did not bar a fee award, because the Trustee's

recovery from Tilton did not represent "satisfaction of any attorneys' fee award that was entered

in addition to PPAS's or Tilton's obligations to pay the base judgment amount plus interest." *Id.*

at 10.  However, he reduced by 40% the total fees sought by the Trustee, finding the timesheets

---

[3] On March 1, 2021, the case was reassigned to Judge Jones from Judge Bernstein, upon his
retirement from the bench. *See LaMonica v. Tilton*, No. 18-1021, Dkt. 165.

the Trustee had submitted "vague and sloppy" and that they prevented him from finding

reasonable the full amount of the legal work performed. *Id.* at 12–14, 16.

### C.    This Appeal

On February 27, 2025, PPAS filed a notice of appeal to this Court of the bankruptcy

court's decision approving the attorney's fees. Dkt. 1.  On April 4, 2025, PPAS moved for

certification of direct appeal to the Second Circuit. Dkt. 4.  On April 10, 2025, the Trustee

opposed.  Dkt. 5 ("Tr. Br.").  On April 17, 2025, PPAS replied ("PPAS Reply Br.").  Dkt. 7.  On

May 8, 2025, the Clerk of the Court issued its Notice of Record of Appeal Availability.  Dkt. 9.

## II.    Discussion

PPAS seeks certification of a direct appeal, under 28 U.S.C. § 158(d)(2), presenting the

following question:

> whether the single-satisfaction rule precludes a chapter 7 Trustee from recovering
> attorneys' fees on a fraudulent transfer award against one defendant (PPAS) when
> the Trustee has already recovered a complete satisfaction for the same avoided
> transfer from a second defendant (Ms. Tilton) that undisputedly exceeds the total
> award (including fees) against the first defendant (PPAS).

PPAS Br. at 6.  PPAS argues that this question must be certified under § 158(d)(2), because there

is "no controlling decision" of the Second Circuit or the Supreme Court.  As developed below,

the Trustee does not seriously dispute that there is no binding authority on this question.  And all

agree that the Circuit's resolution of this pure-law question would dispose of the sole outstanding

issue in these proceedings. *See* PPAS Br. at 2; Tr. Br. at 2.

For the following reasons, the Court finds that certification is merited.

Section 158(d)(2) of the Bankruptcy Code, the provision under which PPAS seeks

certification, "foster[s] the development of coherent bankruptcy-law precedent" and "facilitates

[circuit courts'] provision of guidance on pure questions of law." *Weber v. United States*, 484

F.3d 154, 158–59 (2d Cir. 2007).  It provides that a district court "shall" certify a bankruptcy

court's order for direct appeal to the court of appeals if (1) it involves a question of law "as to

which there is no controlling decision" by the relevant court of appeals or the Supreme Court or

a "matter of public importance"; (2) it involves a question of law "requiring resolution of

conflicting decisions"; or (3) a direct appeal "may materially advance the progress" of the case.

28 U.S.C. § 158(d)(2)(A)–(B).  Section 158(d)(2)(A), written in the disjunctive, allows a

"broader range" of decisions to be certified than § 1292(b), the discretionary interlocutory-appeal

provision. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015).  Certification under § 158(d)(2)

is proper when "any one" of its three requirements is met, whereas § 1292(b) allows certification

"only when three enumerated factors suggesting importance are all present." *Id.* at 508.  And,

unlike § 1292(b), § 158(d)(2) "expressly provides that the lower court may certify that a decision

is susceptible of direct appeal solely because there is no governing legal precedent." *Weber*, 484

F.3d at 159 n.4.

　　If the district court certifies the order for direct appeal, then the court of appeals "has

discretion to hear the matter." *Id.*  The Second Circuit "will be most likely to exercise [its]

discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts." *Id.* at

161.  Among other scenarios, the Circuit has explained, it is apt to intervene (1) in "the absence

of a controlling legal decision," and (2) "where [the court] is called upon to resolve a question of

law not heavily dependent on the particular facts of a case, because such questions can often be

decided based on an incomplete or ambiguous record." *Id.* at 158.

　　That is the case here.  The appeal turns on a question, concerning the application of the

rule of single satisfaction, "as to which there is no controlling decision from the Second Circuit

or Supreme Court." 28 U.S.C. § 158(d)(2)(A)(i).  The bankruptcy court noted that apposite case

law is lacking on (1) whether the single satisfaction rule limits the Trustee to a single recovery

for all claims deriving from the same fraudulent transfer, such that complete satisfaction on one claim precludes an award of attorney's fees on another claim (as PPAS argued); or (2) whether the Trustee may fully recover on one claim and obtain attorney's fees on another claim (as the Trustee argued). It did not locate binding precedent supporting either construction of § 550(d), but found the latter construction more persuasive. *Compare* Bankr. Ct. Order at 11 ("[T]he Court did not find . . . any case where the recovery of statutory interest from another judgment obligor meant that a separate fee award against a different party became unenforceable by operation of the single-satisfaction provision"), *with In re Springfield Hosp., Inc.*, 618 B.R. 109, 115–16 (Bankr. D. Vt. 2020) ("Controlling law for the purposes of section 158(d)(2)(A)(i) is that which admits of no ambiguity in resolving the issue . . . ."), *direct appeal accepted sub nom.*, *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 413 n.10 (2d Cir. 2022), *and In re Bruce*, No. 21 Civ. 7455, 2021 WL 6111925, at *3 (S.D.N.Y. Dec. 27, 2021) (that bankruptcy court did not "point[] to controlling authority from the Circuit or Supreme Court further supports the conclusion that there is no such authority on this question of law"), *direct appeal accepted*, 22-134 (2d Cir. May 4, 2022). And the bankruptcy court found there was "no dispute" over the relevant facts, *id.* at 9, such that proceedings in this Court will not sharpen the outstanding issue. Thus, "a discrete, controlling question of law is at stake," which the Circuit "may be able to settle . . . relatively promptly." *Weber*, 484 F.3d at 161.

The bankruptcy court's reasoning reflects the type of "uncertainty," *id.*, that Congress sought to dispel through Section 158(d)(2). In the absence of binding authority, the bankruptcy court construed § 550(d) by examining the "purpose and effect" of different components of civil judgments and "the applicable New York statutory scheme." Bankr. Ct. Order at 9. Based on its evaluation of those, it concluded that a fee award under DCL § 276-a is exempt from the sweep

of the single-satisfaction rule. *See id.* at 9–11. But the text of § 550 does not dictate that result. It is silent as to the impact of that rule on a separate bid for a fee award when brought against an affiliated defendant.[4] And PPAS's argument to the contrary has some force. Its reading of the provision—that § 550(d) "caps the Trustee's total recovery at the value of the avoided transfer, regardless of the nature of the underlying claims asserted"—is textually available and draws some support from bankruptcy court decisions in this District. PPAS Br. at 6; *see, e.g.*, *Gowan v. The Patriot Grp., LLC*, 452 B.R. 391, 428 (Bankr. S.D.N.Y. 2011) (attorney's fees under DCL § 276 "will only be recoverable if the Trustee establishes at trial actual fraudulent intent by Defendants"); *In re Dreier LLP*, 462 B.R. 474, 494 (Bankr. S.D.N.Y. 2011) ("DCL § 276-a is derivative of an actual fraudulent transfer claim under DCL § 276. Hence, it stands or falls with the disposition of that claim."); *cf. TransCare I*, 81 F.4th at 48 (recognizing applicability of single-satisfaction rule); *id.* at 59 (Menashi, J., dissenting in part as to application of this rule). Section 158 does not require more for certification. *See Weber*, 484 F.3d at 159 n.4 ("[T]he lower court may certify that a decision is susceptible of direct appeal *solely* because there is no governing legal precedent." (emphasis added)).

The cases cited by the Trustee in opposition to certification, none of which applies the Bankruptcy Code, fall short of being "controlling" authority. *See* Tr. Br. at 2. In *West Virginia v. United States*, the Supreme Court held that the federal government could recover prejudgment interest on a payment for "site preparation costs" owed by a state under the Disaster Relief Act

---

[4] *See* 11 U.S.C. § 550(d) ("The trustee is entitled to only a single satisfaction under subsection (a) of this section."); *id.* § 550(a) ("[T]o the extent that a transfer is avoided . . . , the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."); *see also In re Prudential of Fla. Leasing, Inc.*, 478 F.3d 1291, 1299 (11th Cir. 2007) (bankruptcy court was required to apply "federal rule of single satisfaction" "rather than Florida law").

of 1970. 479 U.S. 305, 310 (1987). The Court explained that "[p]rejudgment interest is an

element of complete compensation" and "fully repaying the Federal Government for any costs of

site preparation will further the distribution of the burdens of disaster relief that Congress

intended." *Id.* at 310–11. And in *Atlanta Shipping Corp. v. Chemical Bank*, the Circuit, in a

footnote, noted that the district court's dismissal of state law claims "had the effect of

dismissing" the plaintiff's fees claim under DCL § 276-a, because it "is ancillary to the other

DCL claims, it stands or falls with their disposition and needs no separate consideration." 818

F.2d 240, 245 n.1 (2d Cir. 1987); *see also id.* at 243 (considering whether "admiralty jurisdiction

is available to consider an equitable claim to set aside a transfer to a creditor allegedly made to

frustrate payment of a maritime debt"). But neither case addresses the bankruptcy statute at

issue, much less the operation of the single-satisfaction rule. *Cf. Ark. Game & Fish Comm'n v.

United States*, 568 U.S. 23, 35 (2012) ("[G]eneral expressions, in every opinion, are to be taken

in connection with the case in which those expressions are used. If they go beyond the case, they

may be respected, but ought not to control the judgment in a subsequent suit when the very point

is presented for decision." (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821)

(Marshall, C.J.))). To be sure, these cases may be read to support, conceptually, that a fee award

under DCL § 276-a remedies an injury that is distinct from the underlying judgment and thus

should not trigger the single-satisfaction rule. *See* Tr. Br. at 3. But it is wrong to argue that these

cases *control* the outcome here.

      In sum, the Court finds that certification is warranted, because "there is no controlling

decision from the Second Circuit or Supreme Court" on the single-satisfaction issue here. 28

U.S.C. § 158(d)(2)(A); *see, e.g.*, *In re SVB Fin. Grp.*, No. 24 Civ. 6484, 2024 WL 4345730, at *2

(S.D.N.Y. Sept. 30, 2024) ("[A] district court must certify an order for direct appeal if any one of

the conditions in Section 158(d)(2) is met[.]"), *direct appeal accepted*, 24-2882 (2d Cir. Mar. 11,

2025); *In re Bruce*, 2021 WL 6111925, at *5 ("Because I find that at least one of the three

circumstances enumerated in § 158(d)(2)(A) is present—that the Bankruptcy Court's order

involves a question of law as to which there is no controlling decision from the Second Circuit or

the Supreme Court—the statute requires that I certify the Order for direct appeal."). To be sure,

the Circuit may find the decisive issue more succinctly formulated: "whether the single-

satisfaction rule of § 550(d) precludes a fee award under DCL § 276-a in connection with a

successful fraudulent transfer claim, where the Trustee obtained a recovery on another claim

arising from the same transfer but has not obtained a fee award." But that question is fairly

subsumed within PPAS's proposed question presented.

## CONCLUSION

For the foregoing reasons, the Court grants PPAS's motion to certify for direct appeal

under 28 U.S.C. § 158(d)(2). *See supra* at p.5. The Court accordingly certifies that the

bankruptcy court's order "involves a question of law as to which there is no controlling decision

of the court of appeals for the circuit or of the Supreme Court of the United States." 28 U.S.C.

§ 158(d)(2)(A)(i).

The Court respectfully directs the Clerk of Court to terminate all pending motions, to

transmit a copy of this decision to the Second Circuit, and to place this case on the Court's

suspense docket pending disposition of the appeal.[5]

---

[5] On May 16, 2025, PPAS moved to stay the schedule for briefing its appeal to this Court pending resolution of its motion for direct certification, on the ground that certification would divest this Court of jurisdiction over the sole issue on appeal. Dkt. 10; *see* 28 U.S.C. § 158(d) (the courts of appeals "shall have jurisdiction" upon certification); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'"; Congress legislates against

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated:  May 22, 2025
        New York, New York

---

this "clear background principle." (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982))).  The Trustee did not join in PPAS's stay request, but has not opposed it. *See* Dkt. 10-1 at 2.

      In light of the certification of the appeal, the Court voids the briefing schedule in this Court.  In the event that the Second Circuit denies PPAS's petition, counsel are to promptly notify this Court, which will set a schedule for briefing under which PPAS's opening brief in this Court will be due 30 days after the Circuit's decision.  *Cf.* Fed. R. Bankr. P. 8018(a)(1).